**Allen SCHLEIN, M.D.**

v.

**The MILFORD HOSPITAL.**

**Civ. No. N–74–169.**

United States District Court,
D. Connecticut.

Dec. 7, 1976.

---

John J. Coughlin, Milford, Conn., Arnold J. Bai, Bridgeport, Conn., for plaintiff.

Stephen E. Ronai, Milford, Conn., Jeremy G. Zimmermann, New Haven, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEWMAN, District Judge.

Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). The case is in an appropriate posture for resolution at this stage. Although plaintiff opposes defendant's motion, he contends that he is also entitled to summary judgment. Moreover, sufficient undisputed facts exist to allow determination of the legal issues presented.

Plaintiff Allen Schlein is a physician and orthopedic surgeon licensed to practice medicine in Connecticut. He maintains offices in Bridgeport and Milford, and has staff privileges at two Bridgeport hospitals. Plaintiff's practice in the Milford area led him to apply for staff privileges at defendant Milford Hospital. After a long series of proceedings, the hospital rejected plaintiff's application. Thereafter he brought this action under 42 U.S.C. § 1983, claiming that the hospital had reached its decision without due process of law and in an arbitrary and capricious manner.

Defendant's motion for summary judgment raises three issues: (1) whether the hospital's activities are state action to which Fourteenth Amendment limitations apply, (2) whether the hospital's denial of staff privileges to plaintiff violated procedural due process standards, and (3) whether the hospital's decision was arbitrary and capricious as a matter of substantive due process.

In an earlier ruling denying defendant's motion to dismiss, 383 F.Supp. 1263 (D.Conn.1974), the Court discussed the question of whether the Milford Hospital's denial of staff privileges to plaintiff was state action within the meaning of the Fourteenth Amendment. In that ruling, the Court found that the hospital, which is neither owned nor operated by a government subdivision, nevertheless played a pivotal role in the implementation of the state's regulatory authority over both hospitals and physicians. While acknowledging that the precise contours of state action in the context of a "private" hospital's activities are far from clear, the Court concluded that Connecticut's licensing of both hospitals and physicians created a situation in which state-authorized power was being used to determine the scope of state-created rights. Under those circumstances, I was satisfied that sufficient state action existed to apply Fourteenth Amendment limitations to the hospital.

Defendant has asked the Court to reconsider its earlier ruling on the state action question, particularly in light of the Second Circuit's affirmance of Judge Bauman's decision in *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D.N.Y.), aff'd without opinion, 506 F.2d 1395 (2d Cir. 1974), and the Supreme Court's decision in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). While both of those decisions support the view that a very high degree of state involvement is required before state action is deemed to be present, I am not persuaded that they make resolution of the state action issues in this case automatic. It is "only by sifting facts and weighing circumstances [that] the nonobvious involvement of the State in private conduct can be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). One

factor that was not considered in *Barrett*, or in any other case cited in the parties' briefs, is the significance of a hospital's role in a state system of licensing physicians and hospitals. I held earlier that the Milford Hospital, by virtue of its state license, had been given the authority to determine important aspects of the plaintiff's state license to practice medicine. Thus, state-authorized power was being used to limit a state-created right, and state action was thereby involved in the hospital's denial of staff privileges to plaintiff. Though the issue is not free from doubt, I adhere to that ruling.

 Having determined that the Fourteenth Amendment is applicable to the Milford Hospital, at least to some extent, there remains the question of what process is due an applicant for staff privileges. For the purposes of deciding this case, however, it is unnecessary to chart precisely the minimum requirements of due process for physicians applying for staff privileges. It is sufficient to determine whether the process plaintiff received was adequate to safeguard his protected interests.[1]

 Before the Milford Hospital finally rejected plaintiff's application for staff privileges, Dr. Schlein received a good deal of process. His application was considered and reconsidered by the hospital's Credentials Committee, Executive Committee, and medical staff. At one point Dr. Schlein requested and received an opportunity, which was not part of the hospital's formal procedures, to appear before the Credentials Committee to refute adverse reports it had received. After the medical staff voted to deny him privileges, Dr. Schlein pursued the right granted him by the hospital's by-laws to a hearing before an *ad hoc* committee of the medical staff. Prior to the hearing, he received a written statement of the reasons for the staff's decision. And though he was not permitted counsel at the hearing, he was represented by a doctor of his choice. He appealed that committee's decision, again as provided by the by-laws, to the hospital's Executive Committee. The proceedings there were more *de novo* than appellate in nature, and plaintiff was allowed full legal representation. At both the *ad hoc* and the Executive Committee meetings, no witnesses were called, but plaintiff was given ample opportunity to comment on the written recommendations the hospital had received and to present letters that he himself had solicited.

Courts have repeatedly held that in comparable hospital staff decisions the full ar-

---

1. Plaintiff contends that he has both a property interest and a liberty interest that were adversely affected by the rejection of his application for staff privileges. It may be that he has neither.

Plaintiff's economic interest in practicing medicine as a staff physician at the Milford Hospital may not rise to the level of a Fourteenth Amendment property interest. The Fourteenth Amendment's procedural protection of property is intended to secure interests that a person has already acquired in specific benefits. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). For a person "[t]o have a property interest in a benefit, he clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. In *Roth,* the Supreme Court held that the appellee had no property interest in the retention of his teaching position because he had only been hired for a one-year term. Whatever expectancy Dr. Schlein may have had concerning his application for staff privileges, it was less than Roth's expectancy in his reappointment to a position he already held.

Similarly, it is doubtful whether plaintiff has a constitutionally protected liberty interest at stake. Plaintiff contends that the rejection of his application for staff privileges is a "blemish" on his record, "a permanent scar," and an "albatross" that will limit his liberty to pursue his occupation. Without any further demonstration of possible employment opportunities that have been foreclosed to Dr. Schlein since the hospital's rejection of his application, it is impossible to know whether the alleged stigma attaching to the rejection has resulted in a genuine deprivation of liberty.

To decide this case on the basis of whether plaintiff's arguably protected interests are indeed at stake would require a more extensive factual inquiry than has been conducted so far in this litigation. For the purposes of deciding defendant's motion for summary judgment, therefore, I will assume that plaintiff has a Fourteenth Amendment liberty or property interest in obtaining staff privileges at the Milford Hospital.

ray of procedural due process rights is unnecessary. In fact, courts have found no failure of due process in challenged hospital staff decisions that entailed considerably fewer procedural safeguards than those afforded plaintiff in this case. *Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir. 1971); *Don v. Okmulgee Memorial Hospital*, 443 F.2d 234 (10th Cir. 1971); *Citta v. Delaware Valley Hospital*, 313 F.Supp. 301 (E.D.Pa. 1970). Under these circumstances, I am satisfied that Dr. Schlein received sufficient procedural due process to safeguard his interests.

Finally, plaintiff claims that the hospital's decision to deny him staff privileges was arbitrary and capricious, by which he appears to mean that the decision was not based solely on medical competence, and that the evidence of his unsuitability was not substantial. Although the evidence before the various committees was conflicting, there were reports from physicians who knew Dr. Schlein that included reservations about his professional skills, and particularly about his ability to work with others.

While hospitals must have considerable discretion to determine the necessary qualifications of doctors applying for staff privileges, they must be careful to consider applicants only on grounds that are reasonably related to the purpose of providing adequate medical care. *Sosa v. Board of Managers of Val Verde Hospital*, 437 F.2d 173 (5th Cir. 1971). However, it is entirely consistent with due process for a hospital, in deciding whether to grant staff privileges, to evaluate those personal qualities of a physician that reasonably relate to his ability to function effectively within a hospital environment. A doctor's ability to work well with others, for instance, is a factor that could significantly influence the standard of care his patients received. Due process does not limit the hospital's consideration to technical medical skills.

The Milford Hospital was entitled to consider the negative reports it received concerning Dr. Schlein's ability to work with hospital personnel. Moreover, there was sufficient evidence presented in those reports to support the hospital's decision to reject plaintiff's application for staff privileges. The hospital did not act arbitrarily, capriciously, or unreasonably.

For the foregoing reasons, defendant's motion for summary judgment is granted.